IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**LYNWOOD CANNON**                                                          **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 5:17CV37 KS-LRA**

**COMMISSIONER OF SOCIAL SECURITY**
**ADMINISTRATION**[1]                                            **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Lynwood Cannon, proceeding *pro se,* appeals the final decision denying his application for Social Security Income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision should be affirmed.

On May 24, 2013, Plaintiff protectively filed his sixth application for disability benefits, alleging an initial onset date of April 26, 1998, due to blindness, illiteracy, hepatitis C, memory loss, and injuries to his brain and right wrist.[2] He was 36 years old at the time of filing with no past work experience and a limited education (special

---

[1] Andrew Saul was named the new Commissioner of Social Security on June 17, 2019, and is hereby substituted for his predecessor, Nancy Berryhill. Fed. R. Civ. P. 25(d).

[2] In response to the undersigned's order for clarification, given the number of applications filed, the parties have confirmed that the application which forms the basis of the instant appeal was protectively filed on May 24, 2013. ECF Nos. 31-32. Plaintiff also moved to amend the onset date to the protective filing date, May 24, 2013, at the administrative hearing.

education classes though the fifth grade with subsequent vocational training). Following agency denials of his most recent application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had not established a disability within the meaning of Title XVI Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. At step one of the five-step sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date. At steps two and three, the ALJ found that although Plaintiff's status post remote brain injury, depressive disorder, cognitive disorder, and status post right-hand injury were medically severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following exceptions:

> The claimant cannot climb ladders, ropes, or scaffolds. He can occasionally climb stairs and ramps. He can occasionally balance. He can do no jobs that require frequent or constant lifting beyond ten pounds and no constant or frequent use of the dominant right hand for twisting. He is limited to simple, routine work with only occasional interaction with coworkers and the public. His interactions with others must be on a casual basis and supervision only at the basic level.[3]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a housekeeper, mail sorter, and, packing line-worker.

---

[3] ECF No. 21, p. 367.

**Standard of Review**

The Court's review of the ALJ's decision is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

A claimant's entitlement to disability benefits hinges on whether he can establish his inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at 435 (quoting 42 U.S.C. '' 416(i), 423(d)(1)(A)). The Commissioner reviews the evidence of disability offered by the claimant and evaluates the evidence by using a sequential evaluation.[4] The burden of

---

[4] Under C.F.R. ' 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantially gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff=s impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

proof on the first four steps falls on the claimant; the burden of proof on the last step—whether a claimant can perform work existing in significant numbers in the national economy—rests with the Commissioner. Significantly, the Commissioner only has the burden of proof at step five, while the claimant has the burden of making the threshold showing that the impairment is medically severe at step two. If the ALJ finds that the claimant is disabled or is not disabled at any step in the evaluation, the analysis is terminated.

## Discussion

The primary basis for Plaintiff's multiple disability applications relate to a brain injury he sustained while incarcerated in 1998. The residual effects have allegedly caused him to have cognitive difficulties, trouble following directions, and memory and concentration problems. Although he asserts that mental impairments in conjunction with a right-hand injury sustained after his prison release preclude him from working, Plaintiff acknowledges that he has not looked for work in recent years due to a lack of transportation.[5]

Because he is a *pro se* litigant, the Court applies less stringent standards in interpreting his arguments than it would in the case of a represented party. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Liberally construed, Plaintiff raises three arguments on appeal, two of which relate to the Commissioner's denial of SSI benefits and are thus, properly before the Court: (1) the ALJ erred in assessing the medical

---

[5] ECF No. 21, pp. 12-52.

opinion of the consulting psychologist, Dr. Brian Thomas; and, (2) the ALJ erred in determining his residual functional capacity. Plaintiff's third assignment of error – that his survival benefits were erroneously terminated when he was incarcerated – is not considered.[6]

As to the first point of error, social security regulations divide medical experts into three general categories: (1) treating sources (primary care physicians); (2) non-treating examining sources (physicians who perform a single examination of the claimant); and, (3) non-examining reviewing sources (physicians who review only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502. Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). However, "[s]tate agency and psychological consultants and other program physicians are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i). But ultimately, an ALJ "is free to reject the opinion of any

---

[6] Title II of the Social Security Act provides for the payment of insurance benefits to the child "of an individual who dies a fully or currently insured individual." 42 U.S.C. § 402(d)(1). Although not entirely clear, liberally construed, Plaintiff appears to assert that the Survivors Insurance Benefits he was allegedly receiving as a result of his father's death were erroneously terminated on or around the time of his incarceration. This argument, which appears to have been raised for the first time before the Appeals Council, *pro se*, is not relevant to the SSI application and administrative record currently before the Court.

physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

In the instant case, Plaintiff challenges the ALJ's assessment of the consulting psychologist's opinion. In January 2014, Dr. Brian Thomas opined that Plaintiff's presentation appeared consistent with mild mental retardation. He specifically indicated that Plaintiff had a questionable-to-poor ability to consistently perform routine, repetitive tasks; a fair ability to interact with coworkers; a questionable ability to receive supervision; and, a poor ability to sustain attention. Based on his evaluation, Dr. Thomas concluded that Plaintiff's prognosis for improvement was poor. However, the ALJ rejected this opinion as inconsistent with the evidence as a whole in favor of the reviewing physician's assessment that Plaintiff could perform routine work. Plaintiff contends this was error.[7]

The law is well-settled that while an ALJ is entitled to rely on expert opinions of a claimant's ability to perform various tasks, an ALJ is not bound by them, so long as he explains the weight assigned. *Beck v. Barnhart*, 205 F. App'x. 207, 213–14 (5th Cir. 2006); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Here, the ALJ explained as follows:

> The consultative mental functional evaluation done by Brian Thomas, Psy.D., is given no weight. The claimant's mental impairments are addressed in the residual functional capacity, but the limitations opined by Dr. Thomas exceed the findings contained in the overall evidence. His opinion is not supported by the objective medical evidence and based on a one-time evaluation. Further, his opinion was rejected by the State agency reviewing consultant as inconsistent with the historical record of findings

---

[7] ECF No. 21, pp. 312-14,

6

> by the other Administrative Law Judges and the Appeals Counsel with regard to this claimant. The record contains no evidence of an intervening event that could account for the significant decline since the claimant's last two unfavorable decisions. In addition, at his medical consultative examination a few months earlier, there was no evidence of significant mental disorder. In fact, the claimant had fluent speech, and appropriate mood, normal memory, and good concentration. Finally, the claimant's conduct at the hearing was not consistent with Dr. Thomas's findings. The claimant demonstrated good concentration and attention. His thoughts were logical and coherent, he demonstrated a good memory, and he was not easily distracted. He appeared comfortable and able to follow instructions and participated very well.[8]

Having carefully reviewed the records, the Court finds no basis in the ALJ's reasoning or interpretation of the evidence warranting reversal or remand.

Although Dr. Thomas is an examining source, an ALJ is required to consider the consistency of the medical opinion with the record as a whole; and, the record reflects Plaintiff had little to no mental health treatment or interference with daily activities, undermining the degree of limitations he assigned. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005) (an ALJ may consider a claimant's failure to seek treatment for depression "is an indication of non-disability); *see also McGuire v. Commissioner of Social Security*, 178 F.3d 1295, *7 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms). As additionally observed by the ALJ, the record contains no evidence of an intervening event that could account for the degree of limitations assigned by Dr. Thomas. Rather, substantial evidence supports the ALJ's decision to assign greater weight to the reviewing psychologist's conclusion that Plaintiff retained the ability to do competitive work on a sustained basis,

---

[8] ECF No. 21, p. 371.

as he had no more than moderate limitations in activities in daily living; social functioning; and, maintaining concentration, persistence, or pace. The ALJ was also entitled to consider Plaintiff's ability to persist and concentrate during the administrative hearing despite his reports of memory and concentration problems. These are, in fact, "precisely the kinds of determinations that the ALJ is best positioned to make," as he or she can observe the claimant first-hand. *Olguin v. Barnhart*, 31 F. App'x 838 (5th Cir. 2002); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). No reversal or remand is warranted on this issue for these reasons.[9]

As his second point of error, Plaintiff appears to challenge the ALJ's residual functional capacity determination limiting him to light work. Upon reviewing the evidence, the ALJ concluded that Plaintiff should be limited to occasional balancing and climbing of ramps and stairs, but no frequent or constant lifting of more than 10 pounds or frequently twisting his right hand. He is also limited to simple, routine work with basic supervision and no more than occasional interactions with others.

In making this assessment, the ALJ considered Plaintiff's subjective complaints in compliance with social security rulings and regulations but concluded that the complaints were not credible to the extent alleged. When a claimant's statements concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's credibility determination and

---

[9] ECF No. 21, pp. 348-59.

residual functional capacity determination are entitled to considerable deference and are supported by substantial evidence here. The residual functional capacity analysis was as follows:

> The clamant has a history of a remote brain injury that occurred in 1998 and he has a prior injury to his right hand. These conditions are addressed by limiting the claimant to the light exertional level with additional postural limitations and limitations to the use of his right hand. His consultative examination showed some reduced strength in his right hand that is accommodated by the limitation in the residual functional capacity. He is also limited to jobs that do not require more than occasional balancing due to his prior brain injury and he cannot climb ladders, ropes, or scaffolds. He has been found to have a cognitive disorder and depressive disorder. These conditions are found to result in moderate limitations in social interaction, which is accommodated by a limitation to only occasional interactions with coworkers and the public and his interaction must be on a casual basis with supervision at a basic level. Further, his mental impairments together with the residual effects of his brain injury manifest in moderate difficulty with concentration, persistence and pace. He is therefore limited to only simple, routine work. Overall, the record evidence documents the need for the limitations contained in the residual functional capacity, but does not demonstrate the need for any greater limitations.[10]

The above analysis is well-reasoned and substantially supported by the record.

Although Plaintiff asserts that MRI results from 2002 show the extent of his brain injuries, no medically acceptable clinical or laboratory diagnostic techniques established the existence of impairments which could be reasonably expected to produce the severity of pain or limitations that he alleges. A physical consultative examination performed in July 2013 reveals normal cerebellar function and full range of motion in all areas except for his right hand and wrist. Medical records also consistently reflect relatively normal

---

[10] ECF No. 21, pp. 368-69.

examination findings and treatment for minor illnesses, despite Plaintiff rating his pain as 10/10 on most days. And finally, the evidence fails to establish that Plaintiff's depressive and cognitive impairments exceed the limitations to simple, routine work with basic supervision and no more than occasional interactions with others. [11]

Absent evidence that Plaintiff's impairments impact his ability to perform work-related activities beyond the limitations indicated in the ALJ's residual functional capacity assessment, the undersigned finds no basis for reversal or remand. The mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. Substantial evidence supports the ALJ's finding that Plaintiff can perform light work activity subject to the limitations of his residual functional capacity as set forth herein. Plaintiff offers no other arguments on appeal that are persuasive, proper, or germane to the denial of his application for SSI benefits.

For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision should be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and

---

[11] Id. at 578-86.

Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 12th day of March 2020.

s/ Linda R. Anderson<br>UNITED STATES MAGISTRATE JUDGE